1   JACK IVAN JMAEV, SBN 216,416
    JACK@PURITANLAW.COM
2   FOR PLAINTIFF, NORCO PLASTICS, INC.
    14277 ALBERS WAY
3   CHINO, CA 91710
    (909) 437-8390
4

5

6

7

8                   IN THE UNITED STATES DISTRICT COURT
                      CENTRAL DISTRICT OF CALIFORNIA
9                            EASTERN DIVISION

10

11  NORCO PLASTICS, INC., a          )   CASE NO: 5:15-CV-00049
    California corporation           )
12                                   )   ASSIGNED TO:
                          Plaintiff  )   HON. JESUS BERNAL
13                                   )   COURTROOM 1
              v.                     )
14                                   )
    MOULDTEC, INC., an Illinois      )   FIRST AMENDED COMPLAINT
15  corporation                      )   FOR
                                     )
16                        Defendant  )   CONTRACT DAMAGES,
                                     )   DECEIT, NEGLIGENT
17                                   )   MISREPRESENTATION,
                                     )   DECLARTORY RELIEF, AND
18                                   )   DEMAND FOR JURY TRIAL
                                     )
19  _____ )

20

21
                          First Amended Complaint
                                   1

# JURISDICTION

1. As stated in Paragraph 9 infra, Plaintiff is a corporation under the laws of the State of California.  The Defendant, as stated in Paragraph 10 infra, is a corporation under the laws of the State of Illinois.

2. This Court has original jurisdiction under 28 U.S.C. §1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, $75,000.

3. Further, this action arises under the Patent Laws of the United States, Title 35, United States Code 35 U.S.C. § 1, et seq. and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202.

4. This court has jurisdiction to render declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

5. This Court has personal jurisdiction over the Defendant in that Defendant regularly does business in this district.  Defendant has further subjected himself to the personal jurisdiction of this Court in that Defendant seeks to restrain Plaintiff's rights under California Civil Code §3052.

6. This Court has in rem jurisdiction over a set of molds that are in the possession of Plaintiff under a statutory right created by California Civil

1    Code §3051 and §3052  in that said set of molds are now situated within this

2    district in Chino, California.

3                                    **VENUE**

4    7.  Venue is proper in the Central District of California (Eastern Division)

5    pursuant to 28 U.S.C § 1391 because the events giving rise to this complaint

6    happened in this district.  Venue is also proper under 28 U.S.C § 1391 in the

7    Central District of California (Eastern Division) because a substantial part of

8    the property that is subject to this action is situated in this district.

9                          **NATURE OF THE ACTION**

10   8.  This is an action for Contract Damages, Deceit, Negligent Misrepresentation

11   and for Declaratory Relief as to whether or not plastic products produced by

12   a set of injection molding tools (herein after "molds"), said molds now in

13   possession of Plaintiff, are described by a United States patent.  Yet an

14   additional factor that requires Declaratory Relief is that if the molds are

15   subject to a lien owned by a bank whether any such lien is inferior to or

16   superior to a Statutory Lien under California Civil Code §3051.

17

18

19

20

21

**THE PARTIES**

9.  Plaintiff is Norco Plastics, Inc. and is a Corporation incorporated under the laws of the State of California and having a primary business address of 14325 Monte Vista Ave, Chino, CA 91710.

10. On information and belief, Defendant is Mouldtec, Inc. and is a Corporation incorporated under the laws of the State of Illinois and having a primary business address of 8015 Pyott Road, Crystal Lake, IL 60014.

**FACTS COMMON TO ALL CLAIMS**

11. On or about October 19, 2011, Defendant and Plaintiff met for the first time to consider a business arrangement substantially such that Plaintiff would use a set of molds, provided by Defendant, to produce specially manufactured goods for Defendant and that Defendant would pay money to Plaintiff for such goods.   The specially manufactured goods produced by Plaintiff for Defendant are plastic containers to hold flowers and are used in the cultivation of flowers and for delivery of flowers to wholesale and retail outlets.  It is noteworthy that the demand for these goods is seasonal and follows holidays such as Valentine's Day, Mother's Day and the like.

12. Plaintiff signed two documents substantially contemporaneous with this first meeting.  The first document is entitled "Confidential Disclosure

Agreement". The second document is entitled "Non-Competition Agreement".

13. A copy of the "Confidential Disclosure Agreement" is attached hereto as Exhibit 1.

14. A copy of the "Non-Competition Agreement" is attached hereto as Exhibit 2.

15. There are four molds that Plaintiff now possesses and these include 1) a mold for a "small bucket"; 2) a mold for a "small lid"; 3) a mold for a "large bucket"; and 4) a mold for a "large lid". Plaintiff is maintaining dominion and control over these molds under a statutory right conferred upon Plaintiff by California Civil Code §3051 and §3052.

16. The Parties entered into a contract for specially manufactured goods by means of a purchase order. This first purchase order was issued by Plaintiff to the Defendant on November 3, 2011. This purchase order contract and all subsequent purchase order contracts were separate and apart from the "Confidential Disclosure Agreement" and the "Non-Competition Agreement".

17. Under the initial purchase order dated November 3, 2011, Defendant began accepting specially manufactured goods in December 2011 and, under

subsequent purchase orders, continued to accept additional specially

manufactured goods as late as February 2014.

18. During the course of contract performance, Plaintiff procured raw materials

and manufactured the specially manufactured goods using Plaintiff's own

equipment and facilities.  All such costs were incurred in performance under

the initial and subsequent purchase orders.

19. Defendant received product produced by Plaintiff and began to pay for the

specially manufactured goods produced by Plaintiff and delivered to

Defendant.

20. As the contractual relationship continued, Plaintiff continued to deliver

specially manufactured goods in response to purchase orders received from

Defendant.

21. Defendant had fallen gravely behind in making payments for the specially

manufactured goods delivered by Plaintiff.  In light of the seasonal nature of

Defendant's business, Plaintiff had a good faith belief that Defendant could

make payments and chose to continue extending credit to Defendant.

22. Defendant issued two Purchase Orders identified as the "98 Rev 1 Purchase

Order" dated April 17, 2013, and the "Del Olmo 7777A-Rev 1" Order dated

January 29, 2014.  These are the operative Purchase Orders, which are the

contracts under which Plaintiff began to manufacture additional specially

manufactured goods and to make deliveries of these goods to Defendant.
Plaintiff duly accepted the Purchase Orders and performed fully by
delivering specially manufactured goods.

23. A copy of the 98 Rev 1 Purchase Order is attached hereto as Exhibit 3.

24. A copy of the Del Olmo 7777A-Rev 1 Order is attached hereto as Exhibit 4.

25. The 98 Rev 1 Purchase Order constitutes a written contract for specially
manufactured goods as issued by Defendant and establishes certain and
definite pricing and quantities for such goods.

26. The Del Olmo 7777A-Rev 1 Order constitutes a written contract for
specially manufactured goods as issued by Defendant and establishes certain
and definite pricing and quantities for such goods.

27. The latest deliveries of specially manufactured goods accepted by Defendant
were invoiced against Defendant through Plaintiff's Invoice Nos. 123731,
123770, 123771, 123774, 123775, 123839, 126347, 126381, and 126511.
These invoices are hereinafter referred to as the "Outstanding Invoices".

28. Copies of Invoice Nos. 123731, 123770, 123771, 123774, 123775, 123839,
126347, 126381, and 126511 are attached hereto as Exhibit 5.

29. Invoice Nos. 123731, 123770, 123771, 123774, 123775, 123839 and 126511
were billed against the 98 Rev 1 Purchase Order. Because Defendant raised
no objection to the quantity of product delivered, the type of product

delivered or the amount of money billed by these invoices and did not reject the specially manufactured goods represented by these invoices, Defendant is now under a contractual duty to pay Invoice Nos. 123731, 123770, 123771, 123774, 123775, 123839 and 126511.

30. Invoice Nos. 126347 and 126381 were billed against the Del Olmo 7777A-Rev 1 Order.  Because Defendant raised no objection to the quantity of product delivered, the type of product delivered or the amount of money billed by these invoices and did not reject the specially manufactured goods represented by these invoices, Defendant is now under a contractual duty to pay Invoice Nos. 126347 and 126381.

31. Even though Defendant accepted the specially manufactured goods represented by the Outstanding Invoices, Defendant has not paid for any of these goods.  The amount due for these deliveries is at the heart of this controversy.  The total sum certain due to Plaintiff under the Outstanding Invoices is $157,678.30, exclusive of costs and interest.

32. An enumeration of the Outstanding Invoices is presented as Exhibit 6 and includes specific information relative to the amount of each invoice, the date of each invoice and the purchase order against which the invoice is drawn against.

33. At the end of January 2014, Defendant asked for additional credit and such credit was granted to Defendant by Plaintiff based on Plaintiff's good faith belief that Defendant could pay outstanding debt to Plaintiff in the near future.  Plaintiff's good faith belief for future payment was based on the fact that additional products delivered to Defendant could be sold during the Valentine's Day flower season.

34. At the end of February 2014, Plaintiff still could not secure payment from Defendant and, at that time, discontinued production of the specially manufactured goods based on Plaintiff's good faith belief that Defendant would not be able to pay the Outstand Invoices nor would Defendant be able to pay for additional product that was still due under the order.

35. Plaintiff notes that the full contract price for specially manufactured goods represented by the two Purchase Orders specified in paragraph 22 is $396,062.64.  This total contract price is determined by a spreadsheet created by Plaintiff, said spreadsheet itemizing the total of each type of product and the price for each of said product.  This spreadsheet is referred to as the "Full Contract" spreadsheet.

36. A copy of the Full Contract spreadsheet is attached hereto as Exhibit 7

37. Plaintiff notes that the Outstanding Invoices represent only $ 147,259.45 in delivered product.  This value is calculated based on the original price for

First Amended Complaint

9

the product exclusive of increases on material costs.  This is less than the full contract price by $248,803.19.

38. On or about July 24, 2014, Plaintiff dispatched a letter to Defendant demanding payment for the total of $157,678.30, this sum representing the sum due under the Outstanding Invoices.  This sum reflects not only the product delivered under the orders, but also represents other customary charges such as pallet costs, production set up charges and price variations driven by fluctuations in material costs.  This is a usual and customary billing practice in the plastics industry.

39. A copy of the demand letter of July 24, 2014, from Plaintiff to Defendant is attached hereto as Exhibit 8.

40. On or about July 24, 2014, Plaintiff also dispatched a letter to Defendant advising Defendant that, in the event that the outstanding balance was not received in 10 days, Plaintiff would exercise its rights under California Civil Code §3051 ("California Molder Lien Law").  As such, Plaintiff now maintains possession of the molds and has asserted a lien against the molds as a means of securing, at least in part, the amount now outstanding. Plaintiff avers that this lien is superior to any liens, including prior liens that may be asserted against the molds by a bank or other creditor.

41. On or about July 25, 2014, Defendant replied to the letters from Plaintiff of July 24, 2104.  In this letter of July 25, 2014, Defendant first indicated that the total amount owed to Plaintiff is "disputed by Mouldtec, Inc."  This is the first indication of any denial by Defendant that Defendant has a duty to pay money for specially manufactured goods and this denial is so tardy that it fails to constitute a timely rejection either against the products delivered by Plaintiff or as to the amounts invoiced against Defendant for those products.

42. A copy of Defendant's response letter of July 25, 2014 is attached hereto as Exhibit 9.

43. In the letter of July 25, 2014 from Defendant to Plaintiff, Defendant warns Plaintiff that Plaintiff cannot sell the molds because the molds are subject to a lien owned by a bank.  Defendant did not specify the amount of the lien nor did Defendant specify what bank was the holder of the lien.  This letter also states Defendant's position that Illinois repeatedly enforced bank liens as superior to that state's mold lien law.

44. In the letter of July 25, 2014 from Defendant to Plaintiff, Defendant also warned Plaintiff that the "Confidential Disclosure Agreement" and the "Non-Competition Agreement" enjoined Plaintiff from selling the molds but failed to specify how these agreements should be construed in this manner.

First Amended Complaint
11

45. Plaintiff is not sure how the "Confidential Disclosure Agreement" and the "Non-Competition Agreement" relate to the molds.  Plaintiff believes that the molds are not subject to either of the "Confidential Disclosure Agreement" or the "Non-Competition Agreement".  Plaintiff has no intent to breach its duties under either of these agreements.

46. Plaintiff now holds a possessory lien against the molds as a result of application of California Civil Code §3051.  The intention of this statutory lien is to enable Plaintiff to have at least some partial remedy against Defendant.  Plaintiff now desires to exercise its rights under California Civil Code §3052 which authorizes Plaintiff to sell at auction the molds that are now subject to the lien created by California Civil Code §3051.

47. Plaintiff plans to sell the molds under California Civil Code §3052 for scrap value. Plaintiff's plan is to disfigure the molds rendering them useless for producing plastic product.  Accordingly, Plaintiff must know if there is a bank lien on these molds and whether such bank lien is superior or inferior to the statutory lien created under California Civil Code §3051.

48. Plaintiff took seriously Defendant's statement in the response letter of July 25, 2104 wherein Defendant stated that "As you well know, no one in the world can produce product with Mouldtec, Inc's tools other than Mouldtec, Inc".  Plaintiff appreciates that a patent protecting the products

1    produced by the molds is the only means that would entitle Defendant to

2    such monopoly power.

3    49. Plaintiff is aware that, in other states, there are mold lien laws that allow for

4    sale of molds except where the product is the subject of a United States

5    patent.  Although California Civil Code §3052 has no such "patent

6    exception", Plaintiff is cautious because this issue may have impact on the

7    sale of the molds here.

8    50. Based on Plaintiff's awareness of a "patent exception" in the lien laws of

9    other states and on the statement of protected product made by Defendant in

10   the response letter of July 25, 2104, Plaintiff acted to its detriment and has

11   delayed the sale of the molds at auction for fear that the product produced by

12   the molds are protected by a United Stated patent.  If the products produced

13   by the molds are protected by a United States patent, then Plaintiff will need

14   to render these molds useless for manufacturing such products and will need

15   to incur additional cost in preparing the molds for sale as scrap metal. But

16   for this statement of protected product made by Defendant, Plaintiff would

17   have sold the molds at auction immediately after the lien under California

18   Civil Code §3051 was established.

19   51. Plaintiff must understand the patent rights that Defendant purports to have in

20   the products produced by the molds so that the molds can be modified in

21

First Amended Complaint

13

order to obliterate these alleged patented features from the products the

modified molds produce.

52. Counsel for Plaintiff began to investigate upon what authority Defendant

made such a sweeping statement with regard to protection of product

produced by the molds.  On or about September 30, 2014, counsel for

Defendant indicated in a telephone call that the product produced by the

molds was the subject of a "patent".

53. On or about September 30, 2014, counsel for Plaintiff sent to counsel an e-

mail requesting further information about the "patent".  In response, counsel

for Defendant indicated that he would request from Defendant specifics with

regard to the patent.

54. A copy of the email correspondence between counsel for Plaintiff and

counsel for Defendant of September 30, 2014 is attached hereto as

Exhibit 10.

55. Subsequently, counsel for Defendant sent to counsel for Plaintiff by e-mail

an electronic copy of United States Patent Application Publication No.

US 2013/0327736 A1.  No additional information was provided by

Defendant or by counsel for Defendant.

56. A copy of the first page of the United States Patent Application Publication

No. US 2013/0327736 A1 is attached hereto as Exhibit 11. This patent

1    application, by Rick W. Del Olmo and David E. Hidding, described a bucket

2    similar to the products produced by the molds.

57. Plaintiff avers that the information provided by Defendant is no more than a

patent application and Plaintiff further avers that a patent application confers

no right to restrain the public for making, producing or otherwise utilizing

products that may be described by such application.  As such, Plaintiff avers

that the products produced by the molds in question are not protected by a

United States patent and thus a controversy with regard to this matter exists

between the Plaintiff and the Defendant.

58. Plaintiff avers that Defendant knew that there was no issued patent that

afforded protection for the products produced by the molds.  Plaintiff now

believes to be false the statement of exclusive rights of manufacture made by

Defendant in the response letter of July 25, 2014 and further avers that the

Defendant intentionally made this statement knowing it to be untrue and

made this statement so as to cause Plaintiff to refrain from exercising its

rights under California Civil Code §3052.

59. Plaintiff also avers that Defendant should have known that a patent

application does not provide any protection of exclusive manufacture of the

products produced by the molds and should not have made a statement to

that effect.

## **FIRST CLAIM FOR RELIEF**

### **Claim I: Breach of Contract, Price of Goods Delivered**

60. Plaintiff realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 – 59.

61. By doing the acts described in Paragraphs 22 – 31, Defendant has breached a duty to pay money to Plaintiff for specially manufactured goods delivered to Defendant under a written contract and this entitles Plaintiff to recover damages for the price of the goods so delivered amounting to a sum certain (represented by the Outstanding Invoices) of $157,678.30.

## **SECOND CLAIM FOR RELIEF**

### **Claim II: Breach of Contract, Full Contract Price**

62. Plaintiff realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 – 59.

63. By doing the acts described in Paragraphs 22 – 31, Defendant placed an order for specially manufactured goods and, based on Plaintiff's good faith belief that Defendant would repudiate the contract for said goods, ceased delivery. Had Defendant not acted in this manner, Plaintiff would have delivered the entire quantity of goods deliverable under the two purchase orders (described in Paragraph 22) thus entitling Plaintiff to the full contract price. Given that the contract was for specially manufactured goods,

Plaintiff had an expectation that Plaintiff would deliver the entire quantity under the contract and entered into the contract, inter alia, based on this expectation. As such, Plaintiff has been damaged and is entitled to receive the expected full contract price of $396,062.64.

## THIRD CLAIM FOR RELIEF

### Claim III: Unjust Enrichment, Price of Product Delivered

64. Plaintiff realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 – 59.

65. By doing the acts described in Paragraphs 22 – 31 and especially the acts described in Paragraph 31, Plaintiff provided specially manufactured goods to Defendant with the expectation that Plaintiff would receive payment from Defendant for said specially manufactured goods, the Defendant knew that payment was expected by the Plaintiff and Defendant has enjoyed the use of the specially manufactured goods without making any payment to the Plaintiff. Accordingly, it is proper that the Defendant make restitution to the Plaintiff in the amount of $157,678.30, which is the sum represented by the Outstanding Invoices.

## **FOURTH CLAIM FOR RELIEF**

### **Claim IV: Deceit, Damages for Reliance**

66. Plaintiff realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 – 59.

67. By doing the acts described in Paragraphs 41 – 59, Defendant misrepresented that the products produced by the molds were protected by a patent when the Defendant knew that there was no issued patent, only a patent application exists and that application does not provide such protection.  Defendant made this statement to cause the Plaintiff to abstain from selling the molds.  Plaintiff properly relied upon this statement because Plaintiff knew that, if a patent existed, a patent could materially alter the value of the molds at auction and may have precluded sale of the molds entirely.  Plaintiff continues to rely on this statement to this day because of the indication by Defendant that a patent exists even though a patent has not been identified by the Defendant.  As a result of such reliance on a false statement, Plaintiff has been damaged by abstaining from the sale of the molds at auction, such sale having likelihood of offsetting money owed to Plaintiff by Defendant and Plaintiff is entitled to such damages.

# FIFTH CLAIM FOR RELIEF

## Claim V: Negligent Misrepresentation, Damages for Reliance

68. Plaintiff realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 – 59.

69. By doing the acts described in Paragraphs 41 – 59, Defendant misrepresented that the products produced by the molds were protected by a patent when the Defendant knew that there was no issued patent and Defendant should have known that a patent application, which is all that existed then and now, does not provide such protection.  Defendant made this statement to cause the Plaintiff to abstain from selling the molds. Plaintiff properly relied upon this statement because Plaintiff knew that, if a patent existed, a patent could materially alter the value of the molds at auction and may have precluded sale of the molds entirely.  Plaintiff continues to rely on this statement to this day because of the indication by Defendant that a patent exists even though a patent has not been identified by the Defendant.  As a result of such reliance on a false statement, Plaintiff has been damaged by abstaining from the sale of the molds at auction, such sale having likelihood of offsetting money owed to Plaintiff by Defendant and is entitled to such damages and interest thereon.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

## SIXTH CLAIM FOR RELIEF

### Claim VI:

### Declaratory Judgment that

### Lien Under California Civil Code §3051

### is Superior to Pre-Existing Chattel Lien

70. Plaintiff realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 – 59.

71. As described in Paragraph 43, Defendant alleges that the molds are subject to a lien by a bank and that this lien is superior to a lien established by California Civil Code §3051.  Plaintiff disagrees.

72. Ever since 1917, State courts in this District have applied the guidance of *Mortgage Securities Co. of CA v. Pfaffmann*, *177 Cal. 109, 169 P. 1033 (1917)*, wherein it is acknowledged that, in California, the "… law does with intention make the possessory lien … superior to the lien of the pre-existing chattel mortgage …".  Given that the molds are currently situated in Chino, California, the molds are subject to the laws of California and, as such, a lien established in accordance with the California Civil Code §3051 must be found superior to any pre-existing chattel lien.

73. Pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, and in light of the fact that there is a controversy between

1   Plaintiff and Defendant with respect to whether a lien created by application

2   of California Civil Code §3051 is superior to a bank lien, Plaintiff is entitled

3   to a declaration that the possessory lien now held by Plaintiff against the

4   molds is superior to a bank lien.  Plaintiff respectfully submits that such

5   declaration is necessary at this time so that Plaintiff may proceed to sell the

6   molds in exercise of Plaintiff's right to sell the molds, said right arising from

7   application of California Civil Code §3052.

8

9   **SEVENTH CLAIM FOR RELIEF**

10   **Claim VII:**

11   **Withdrawn**

12   74. Plaintiff hereby withdraws its Seventh Claim for Relief.

13

14   **EIGHTH CLAIM FOR RELIEF**

15   **Claim VIII:**

16   **Withdrawn**

17   75. Plaintiff hereby withdraws its Eighth Claim for Relief.

18

19   **NINTH CLAIM FOR RELIEF**

20

21

First Amended Complaint

21

1

**Claim IX:**

2

**Withdrawn**

3

76. Plaintiff hereby withdraws its Ninth Claim for Relief.

4

5

**<u>TENTH CLAIM FOR RELIEF</u>**

6

**Claim X:**

7

**Declaratory Judgment that**

8

**Products Produced by Molds are**

9

**Not Described by a United States Patent**

10

77. Plaintiff realleges and incorporates herein by reference each and every

11

allegation contained in Paragraphs 1 – 59.

12

78. Defendant has indicated, as described in Paragraphs 52 – 55, that the

13

products produced by the molds are protected by a United States patent.

14

Plaintiff disagrees.

15

79. Defendant has only provided evidence of a pending patent application that

16

has not issued as a United States patent.  It is well settled that a patent

17

application does not confer any rights to the applicant thereof.  It is only

18

after a patent application has been allowed, issue fees paid and the

19

application issues as a United States patent that any rights of protection

20

arise.  Based on information and belief, Plaintiff avers that there is no patent

21

First Amended Complaint
22

1    issued by the United States Patent and Trademark Office that affords

2    protection to the products produced by the molds at issue here.

3    80.    Pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil

4    Procedure 57, and in light of the fact that there is a controversy between

5    Plaintiff and Defendant as to whether or not the products produced by the

6    molds are protected by a United States patent, Plaintiff seeks a declaration

7    from this Court that the products produced by the molds are not described by

8    a United States patent because there actually is no issued patent.  Plaintiff

9    respectfully submits that such declaration is necessary at this time in support

10    of Plaintiff's Fourth and Fifth Claims for Relief, supra.

11

12

13

14

15

16

17

18

19

20

21

First Amended Complaint
23

## **REQUEST FOR RELIEF**

WHEREFORE: Plaintiff, Norco Plastics, Inc., requests relief from this Court in the following manner:

81. With regard to Claim I, for a judgment in the amount of $157,678.30 representing a sum certain represented by the Outstanding Invoices;

82. With regard to Claim II, for a judgment in the amount $396,062.64 representing Plaintiff's expectation under two contracts;

83. With regard to Claim III, for a judgment in the amount $157,678.30 representing restitution to Plaintiff for a fair price for the specially manufactured goods delivered;

84. With regard to Claim IV, for reliance damages according to proof and punitive damages appropriate to dissuade such future behavior as Defendant exhibited;

85. With regard to Claim V, for reliance damages according to proof;

86. With regard to Claim VI, for a declaration that a lien on the molds held by Plaintiff and created by application of California Civil Code §3051 is superior to a pre-existing chattel lien;

87. With regard to Claim X, for a declaration that the product produced by the molds is not described by a United States patent; and

88. Any further relief which the Court may deem appropriate.

First Amended Complaint
24

## <u>**REQUEST FOR JURY TRIAL**</u>

89. Plaintiff hereby requests a jury trial on all issues raised in this complaint.

<div style="margin-left:40%">

Respectfully Submitted,
DATED: March 2, 2015
<u>/s/ Jack I. Jmaev</u>
Attorney for Plaintiff, SBN 216,416
jack@puritanlaw.com
(909) 437-8390

</div>

First Amended Complaint